Bond-Gleason, Inc. v. Commissioner.
Bond-Gleason, Inc. v. Commissioner
Docket No. 57019.
United States Tax Court
T.C. Memo 1959-2; 1959 Tax Ct. Memo LEXIS 247; 18 T.C.M. (CCH) 3; T.C.M. (RIA) 59002; January 13, 1959
*247 Petitioner prepared and filed its income tax returns on the cash basis of accounting. Pursuant to the authorization contained in section 41, I.R.C. 1939, respondent computed petitioner's income on an accrual basis and determined the deficiencies involved on the basis of such computation. 1. Held, respondent's determination of income on an accrual basis, with certain adjustments, sustained. 2. Held, the provisions of section 275(c), I.R.C. 1939, are applicable and the year 1948 is not barred by the statute of limitations. 3. Held, petitioner is liable for additions to tax under section 291(a), I.R.C. 1939, for failure to file timely income tax returns. Harold B. Stone, Esq., Empire Building, Knoxville, Tenn., for the petitioner. Jack D. Yarbrough, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion
*249 BRUCE, Judge: Respondent determined deficiencies in income tax and additions to tax with respect to petitioner as follows: Taxable
Addition to Tax
Year
Sec. 291(a),
Ended 11-30
Deficiency
I.R.C. 1939
1948
$ 1,109.27
$ 55.46
1949
1,551.48
77.57
1950
372.63
175.10
1951
466.08
371.72 Respondent has conceded on brief that the deficiency for the taxable year ended in 1949 is barred by the statute of limitations. Accordingly, his determination with respect to that year is no longer in issue. The following issues are presented for decision: (1) Whether respondent properly computed petitioner's income for each of the years in issue on an accrual basis of accounting; (2) whether the statute of limitations bars the assessment and collection of the deficiency for the taxable year ended in 1948; and (3) whether petitioner is liable for additions to tax under section 291(a), Internal Revenue Code of 1939, for each of the years in issue. Findings of Fact The stipulated facts and attached exhibits are incorporated herein by this reference. The petitioner is a corporation which was organized under the laws of the State of Tennessee on November 29, 1947. Its *250 outstanding capital stock is represented by 100 shares of common stock having a par value of $ 100 per share. The petitioner kept its books and filed its income tax returns for each of the years ended November 30, 1948 to 1951, inclusive, with the collector (or district director) of internal revenue for the district of Tennessee, and according to the cash basis of accounting. During the years involved petitioner operated a retail furniture store at Oak Ridge, Tennessee. J. C. Gleason was president and general manager of the petitioner and owned 50 per cent of its common stock. The majority of petitioner's customers had low incomes. Inventories were a substantial income-producing factor in the operation of petitioner. The petitioner's cash receipts for each of its fiscal years ended November 30, 1948 to 1951, inclusive, were as follows: Year
Amount
11-30-48
$33,763.29
11-30-49
45,777.47
11-30-50
45,232.79
11-30-51
65,135.28
Petitioner's beginning and ending inventories and its beginning and ending accounts receivable, exclusive of an allowance for bad debts, for each of its taxable years ended in 1948 to 1951, inclusive, were as follows: Inventory
Accounts Receivable
Year Ended
Beginning
Ending
Beginning
Ending
11-30-48
None
$ 7,353.15
None
$ 11,869.98
11-30-49
$ 7,353.15
5,420.00
$ 11,869.98
21,534.64
11-30-50
5,420.00
8,903.25
21,534.64
19,666.05
11-30-51
8,903.25
11,655.42
19,666.05
22,748.36
*251 Petitioner's expenditures for purchases and for freight in each of its taxable years ended in 1948 to 1951, inclusive, were as follows: Year Ended
Purchases
Freight
11-30-48
$ 32,163.10
$ 1,160.39
11-30-49
32,267.93
743.67
11-30-50
30,870.32
658.68
11-30-51
47,040.10
695.01
Petitioner's cash expenses during each of its taxable years ended in 1948 to 1951, inclusive, were as follows: Year Ended
Amount
11-30-48
$ 8,218.24
11-30-49
13,350.57
11-30-50
12,798.52
11-30-51
15,506.58
Petitioner's beginning and ending accounts payable for each of its taxable years ended in 1948 to 1951, inclusive, were as follows: Accounts Payable
Year Ended
Beginning
Ending
11-30-48
None
$ 5,000.00
11-30-49
$5,000.00
4,000.00
11-30-50
4,000.00
3,618.15
11-30-51
3,618.15
4,489.77
The proper allowance for uncollectible accounts receivable for the year ended in 1948 was $ 2,141.37. The petitioner's corporation income tax returns, Forms 1120 for its taxable years ended November 30, 1948, 1950 and 1951, and Forms 1120FY for its taxable years ended November 30, 1950 and 1951, were filed on the dates as indicated *252 below: Year Ended
Form
Date Filed
11-30-48
1120
3-15-49
11-30-50
1120
1120 FY
8-13-51
11-30-51
1120
1120 FY
12-14-53 Such returns were prepared according to the cash basis of accounting. The following information is disclosed on such returns: Year Ended
11-30-48
11-30-50
11-30-51
Gross Sales
$ 33,763.29
$ 45,232.79
$ 65,424.10
Cost of Goods
Sold
25,970.34
28,045.75
44,982.94
Gross Profit from Sales
7,792.95
17,187.04
20,441.16
Total Deductions
8,218.24
12,798.52
15,522.62
Net Income
(425.29)
4,388.52
4,918.54
The petitioner leased its premises from the Roane-Anderson Company under an "Agreement for Concession." The pertinent provisions of such agreement are as follows: * * *
"3. CONSIDERATION STATEMENT. The Concessionaire [petitioner] agrees to pay to the Agent [Roane Anderson Company] as compensation for this concession Eight (8) percent of gross receipts from all sources derived from or arising out of the operation and maintenance of said Concession. Gross receipts as used in this Agreement shall mean: "(a) Money collected on sales of all merchandise of every sort, whatsoever *253 and money collected on charges for all services performed, including sales or charges made by the Concessionaire or any other person or persons selling merchandise or performing services of any sort in, upon or from any part of the premises herein described unless such other person or persons are licensed directly by the Agent or by some other authority under the control of the Atomic Energy Commission. In the event that the Concessionaire, in accordance with Article II hereof, shall sublet any part of the concession herein granted to him, the term gross receipts as defined in subparagraphs (a) and (b) herein shall also include the gross receipts of the subconcessionaire, but shall not include any payment or other compensation due or paid by the subconcessionaire to the Concessionaire for the privilege of operating the subconcession. "(b) It is agreed that gross receipts shall not include any moneys collected by the Concessionaire after the effective date of expiration or termination of the Concession herein granted, provided that if the Concessionaire or any assignee of or successor to the Concessionaire's business enters into or continues operations under another Concession Agreement *254 within the Oak Ridge Area, before or after the effective date of expiration or termination of the Concession herein described, and makes collection of accounts due for sales made or services rendered during the term of the expired or terminated Concession, all such collections shall be included in gross receipts thereunder. "Gross receipts as defined in subparagraphs (a) and (b) above, shall not include any of the following items if properly evidenced in a manner acceptable to the Agent: cash refunds and adjustments; tradein allowances; merchandise cancellations; (trade) discounts and other credits of a similar nature allowed at the time of sale; transfers of merchandise to other business establishments owned wholly or in part by the transferor (or, if the transferor is a partnership, owned wholly or in part by one of the partners thereof) provided, however, that this shall not be construed as permission for the transferor to maintain exclusive warehousing for any business establishment located outside of the Oak Ridge Area; small transfers of merchandise to any business establishment in Oak Ridge, as a convenience to said business establishment for resale at retail; luxury, excise, *255 sales or use taxes levied by either the Federal, State or Local Government, or other duly constituted authority collected separtedly from the customers and remitted by the Concessionaire direct to such Governmental authority. "The Concessionaire shall pay prior to December 1, 1948, the sum of $250.00, said sum constituting minimum consideration for the period December 1, 1948 through December 31, 1948. It is agreed that for each month of the calendar thereafter, the Concessionaire shall pay, on or before the tenth day thereof, the minimum monthly consideration of $250.00. Each payment of minimum consideration shall be credited to the percentage of gross receipts due the Agent from the Concessionaire for the same period, whenever such percentage of gross receipts exceed the minimum consideration paid for said period. In the event this agreement expires, for whatever reason, prior to the last day of any month of the calendar, the minimum consideration paid for said month of the calendar shall be prorated on a daily basis (to be computed on a 30-day month), and the Agent shall retain (and credit the Concessionaire on the percentage due, if such percentage is greater than) the proportionate *256 part of minimum consideration covering the number of days up to and including the effective date of expiration. "The Concessionaire shall, within ten (10) days after the close of business on the last day of each and every month of the calendar during the term hereof, state, render and deliver to the Agent a statement in writing, sworn to by the Concessionaire, showing in detail the gross receipts as defined above, derived from the Concession during the month preceding the delivery of such statement, and shall pay all sums due hereunder to the Agent. In no event shall this Agreement be construed as creating a partnership between the parties hereto." * * *
The petitioner and respondent entered into an agreement, Form 872, on December 22, 1953, to extend the period of limitation for the assessment and collection of deficiencies for the year ended November 30, 1948, to June 30, 1954. On April 27, 1954, the petitioner and the respondent entered into a similar agreement to extend the period of limitation to June 30, 1955. The notice of deficiency was mailed to petitioner on December 20, 1954. Respondent's computation of net income on an accrual method of accounting upon which *257 his determination of deficiencies is based as disclosed on Exhibit J is as follows: COMPUTATION OF NET INCOME - BOND-GLEASON, INC.
For Fiscal Years Ended 11-30-48 to 11-30-51, Inclusive
11-30-48
11-30-49
11-30-50
11-30-51
Sales n.1
$ 44,446.27
$ 54,475.67
$ 43,551.05
$ 66,957.70
Inventory - beginning
0
7,353.15
5,420.00
8,903.25
Purchases n.2
37,163.10
31,267.93
30,488.47
45,124.84
Freight in
1,160.39
743.67
658.68
695.01
Total
$ 38,343.49
$ 39,364.75
$ 36,567.15
$ 54,723.10
Inventory - ending
7,353.15
5,420.00
8,903.25
11,655.42
Cost of Sales
$ 30,970.34
$ 33,944.75
$ 27,663.90
$ 43,067.68
Gross Profit
$ 13,475.93
$ 20,530.92
$ 15,887.15
$ 23,890.02
Less Expenses
8,218.24
13,350.57
12,798.52
15,506.58
Net Income
$ 5,257.69
$ 7,180.35
$ 3,088.63
$ 8,383.44
n.1 Sales: Cash - per returns
$ 33,763.29
$ 45,777.47
$ 45,232.79
$ 65,135.28
Add a/c Rec. Ending *
10,682.98
19,381.18
17,699.44
19,521.86
Total
$ 44,446.27
$ 65,158.65
$ 62,932.23
$ 84,657.14
Less a/c Rec. Beginning
0
10,682.98
19,381.18
17,699.44
Sales - Accrual Basis
$ 44,446.27
$ 54,474.67
$ 43,551.05
$ 66,957.70
* A/C Receivable per summary
sheets
$ 11,869.98
$ 21,534.64
$ 19,666.05
$ 22,748.36
Less bad debts allowed
1,187.00
2,153.46
1,966.61
3,226.50
Corrected good a/c Rec.
$ 10,682.98
$ 19,381.18
$ 17,699.44
$ 19,521.86
*258 n.2 Purchases: Cash per return
$ 32,163.10
$ 32,267.93
$ 30,870.32
$ 47,040.10
Add a/c Payable - ending
5,000.00
4,000.00
3,618.15
1,702.89
Total
$ 37,163.10
$ 36,267.93
$ 34,488.47
$ 48,742.99
Less a/c Payable - beginning
0
5,000.00
4,000.00
3,618.15
Purchases accrual basis
$ 37,163.10
$ 31,267.93
$ 30,488.47
$ 45,124.84
Opinion The taxable years involved in this proceeding are petitioner's fiscal years ended November 30, 1948, 1949, 1950 and 1951. Respondent, on brief, has conceded that the assessment of a deficiency for the year ended in 1949 is barred by limitations. Assessment of a deficiency for the year ended in 1948 is likewise barred unless it is established that petitioner omitted from gross income an amount properly includible therein in excess of 25 per cent of the amount of gross income stated in the return, within the meaning of section 275(c) of the Internal Revenue Code of 1939. The burden of proof with respect to this issue is upon the respondent. As to all other issues, petitioner has the burden of overcoming the presumptive correctness of respondent's determinations. Petitioner prepared its income tax returns for each of the years in issue according to the cash receipts and disbursements method of accounting. Pursuant to authorization contained in section 41, Internal Revenue Code of 1939, [1] respondent recomputed petitioner's income for such years according to an accrual method in order clearly to reflect income. The deficiencies determined by respondent were generally the result of his including in gross income the amount of ending accounts receivable which had been omitted under the cash method. *259 Petitioner does not question respondent's use of an accrual method in computing its taxable income. It contends, however, that in certain instances respondent has improperly applied such method to the facts presented. We consider only those items which are in controversy. Uncollectible Accounts Receivable. Petitioner did not claim any deduction for uncollectible accounts receivable in any of its income tax returns for the years involved. It maintained an accounts receivable ledger, but did not maintain any record of bad accounts. So long as it reported its *260 income according to the cash receipts method, there was, of course, no need for an allowance for uncollectible accounts since sales were reported only as payments for them were received. Under an accrual method, however, some allowance or reserve for bad debts is standard accounting practice and is considered necessary in order to approximate as nearly as possible the actual income from the year's sales. See Regs. 111, section 29.23(k)(5). Respondent recognized the necessity for such an allowance in the instant case and made the following allowances for uncollectible accounts receivable at the end of each taxable year: Year Ended
Nov. 30
1948
$ 1,187.00
1949
2,153.46
1950
1,966.31
1951
3,226.50 Such amounts were subtracted by respondent from the amounts of ending accounts receivable in order to arrive at the amount of accounts receivable includible in petitioner's taxable income for each of the years involved, under an accrual method of accounting. Respondent's agent arrived at the amounts shown for the first three years by taking 10 per cent of the accounts receivable *261 at the end of each year. For the year ended in 1951, the amount shown was agreed upon by respondent's agent and petitioner's president or accountant. Petitioner does not now dispute the amounts shown by respondent as uncollectible accounts receivable for either of the years 1950 or 1951. It contends, however, that the proper allowance for the year 1948 is $ 2,141.37 rather than the $ 1,187 allowed by respondent. In support of its contention petitioner offered evidence showing that $ 2,141.37 of the accounts receivable based on sales made in 1948 were still uncollected in 1958. It also offered testimony to the effect that petitioner's customers in general had low incomes and that collection was a considerable problem. Respondent offered no evidence with respect to the reasonableness of the amount shown by him other than the testimony of his agent that it represented 10 per cent of the accounts receivable for that year. Considering all the facts and circumstances we have found that a reasonable allowance for uncollectible accounts receivable for the taxable year ended in 1948 is at least $ 2,141.37. Petitioner's principal complaint with respect to the allowances for uncollectible accounts *262 receivable apparently has to do with respondent's treatment of the bad debt allowances in his computation of income. It is apparently petitioner's position that the amounts allowed by respondent or uncollectible accounts should have been progressively added each year. Petitioner has offered neither reasoning nor authorities in support of its position, however, and we find no justification or merit in its contention herein. Bad debt allowances are properly deductible for the purpose of approximating as nearly as possible the amount of income taxable to a taxpayer arising out of credit sales for the taxable year which have not been collected at the end of the taxable year. It is not proper, as apparently contended by petitioner, to aggregate the amount of bad debt allowances for all prior years to determine the allowance for the taxable year because the resulting aggregate would bear no relationship to the amount of unpaid credit sales made during the taxable year. The proper method is to determine the increase in ending accounts receivable attributable to sales made during the taxable year and allow a deduction based on such income. This, in effect, is what respondent has done in the *263 instant case. Except as noted above for the taxable year ended in 1948, the amount allowed by respondent for uncollectible accounts receivable for each of the taxable years involved is approved. Accounts Payable. In his determination of petitioner's income on the accrual basis, respondent allowed deductions for ending accounts payable. The parties have resolved their dispute with respect to this item for all taxable years except that ended in 1951. For that year respondent allowed the amount of $ 1,702.87. Petitioner contends that the proper amount is $ 5,683. At the hearing petitioner introduced in evidence a group of invoices and a summary thereof which disclosed that petitioner made purchases in the amount of $ 4,489.77 during that year which were paid for by check after the end of the year. Petitioner's president also testified that he had examined his check stubs and found payments made to other concerns at the same time as those mentioned above, which together with those payments above totaled about $ 5,683. Petitioner's president admitted, however, that he did not have any invoices for the purchases for which such second group of checks were issued and that he could not establish *264 the date of such purchases. On brief, apparently in light of such evidence, respondent has conceded that petitioner had ending accounts payable in the amount of $ 4,489.77. Petitioner's evidence is insufficient to show that it is entitled to any greater amount, for it is unable to show that the purchases which were paid for by the second group of checks were made during the taxable year. In view of the circumstances and the facts presented, we have found that petitioner had ending accounts payable in the amount of $ 4,489.77 for the taxable year ended in 1951. Rental Expense. Petitioner also maintains that respondent improperly failed to accrue certain rental expenses when he changed petitioner's method of accounting from the cash to an accrual basis. The provisions of the lease agreement pertinent to this issue are set out in our findings. Except for a specified minimum, it is provided that the amount of petitioner's rental shall be eight per cent of the amount of petitioner's gross receipts. In general, gross receipts is defined under the lease agreement as moneys collected on sales by petitioner. It is further provided that gross receipts shall not include any moneys collected *265 by petitioner after the expiration or termination of the "Concession Agreement" unless at the time of such collection the petitioner or its assignee or successor was operating under another "concession agreement." In essence, petitioner's contention is that if in the computation of its income for the taxable year it must include the amount of outstanding accounts receivable, then in the same taxable year it is entitled to accrue as a rental expense the amount of its rental which will be attributable to such accounts receivable. The pertinent reference is section 23(a)(1)(A), Internal Revenue Code of 1939. [2] That section provides for the deduction of all expenses paid or incurred in the taxable year. It is fundamental that an accrual basis taxpayer may take deductions only in the taxable year in which the liability for such items of deduction occurs, Brown v. Helvering, 291 U.S. 193, even though the transaction giving rise to the accrual of liability may have taken place in an earlier year. Lucas v. Ox Fibre Brush Co., 281 U.S. 115. Whether a deduction is accruable *266 depends upon whether the liability therefor has been fixed and determined. No deduction is allowable on an accrual basis if there is no legal obligation during the taxable year to make payment. Brown v. Helvering, supra; Sheldon & Co. v. Commissioner, 214 Fed. (2d) 655, affirming on this issue 19 T.C. 481. In the instant case, the operative factor which determined petitioner's liability for rental under the agreement was the collection of money from sales. No rental (other than the specified minimum amount) was due until the amount of any particular sale was actually collected. Thus, no rental liability existed at the end of the taxable year with respect to outstanding accounts receivable at that time. Accordingly, petitioner is not entitled to accrue a rental deduction with respect to such amounts and respondent's determination is sustained. *267 Statute of Limitations. The next issue is whether respondent is barred from assessing an additional tax for the year ended in 1948 because of the statute of limitations, section 275(a), Internal Revenue Code of 1939. [3] Respondent's position is that the exception to such statute contained in section 275(c)[4] is applicable. That section provides that in certain circumstances the tax may be assessed at any time within five years after the return is filed. In the instant case, the notice of deficiency was mailed more than five years after the return was filed. However, the parties entered into two agreements (Form 872) within such five-year period in which the petitioner consented to extend the said period in which assessment could be made under section 275 to June 30, 1955. The notice of deficiency was mailed to petitioner on December 20, 1954. In these circumstances, and in accordance with section 276(b), Internal Revenue Code of 1939, [5] the effect of the "waivers" executed by petitioner was to extend to June 30, 1955, the period during which respondent might assess the tax under the provisions of section 275(c). Thus the issue is narrowed to a question of whether the petitioner *268 has omitted "from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return" within the meaning of section 275(c). It was settled in The Colony, Inc. v. Commissioner, 357 U.S. 28, that section 275(c) applies only to those situations where the taxpayer actually omitted some income receipt or accrual in his computation of gross income. In the instant case, the facts show that petitioner omitted the entire amount of its accounts receivable, less bad debt allowance, from the computation of gross income on its return. It is clear that such failure to account constitutes an "omission" within the contemplation of section 275(c) as construed in The Colony, Inc. v. Commissioner, supra.We next determine whether the amount of such omission is sufficient to make section 275(c) applicable. That section is operative only when the amount of the "omission" exceeds 25 per cent of the "amount of gross income stated in the return." Under Colony it seems clear that the amount of the "omission" is the amount of the items of income receipt or accrual which was "left out" of the computation of gross *269 income. In the instant case such amount is $9,728.61 (representing the amount of unreported accounts receivable, $11,869.98, less the allowance for uncollectible accounts, $ 2,141.37). Petitioner urges, and respondent apparently agrees that the teaching of Colony is that "gross income" within the meaning of section 275(c) means "gross receipts." To resolve the issue here presented, however, we find it unnecessary to decide whether such interpretation is correct, since the amount of the "omission" ($9,728.61) exceeds 25 per cent of either the amount of "gross income" ($7,792.95) or the amount of "gross receipts" ($33,763.29) stated on the return. Accordingly, we hold that the respondent has carried his burden of proof and that the taxable year ended in 1948 is not barred by the statute of limitations. *270 Additions to Tax. The last issue is whether the petitioner is liable for additions to tax under section 291(a), Internal Revenue Code of 1939, [6] for each of the years in issue for failure to file timely returns. The additions to tax prescribed by this section are applicable unless the failure to file timely is due to reasonable cause. Since petitioner's taxable year was a fiscal year ended November 30, it was required to file its returns on or before February 15 of the following year. Section 53(a), Internal Revenue Code of 1939. None of the returns for the years in issue was timely filed. The petitioner apparently does not seriously dispute respondent's determination since it does not mention the issue on brief. The only explanation offered at the hearing by petitioner's president for the delay in filing the returns was that he thought the due date for filing was March 15. An uninformed and unsupported belief "no matter how sincere" does not constitute reasonable cause within the meaning of this section. Robert A. Henningsen, 26 T.C. 528, affd. 243 Fed. (2d) 954. Accordingly, respondent's determination of additions to tax under section 291(a), with *271 adjustments to reflect our findings of fact with respect to other issues, is sustained. Decision will be entered under Rule 50. Footnotes
1. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In general. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *↩
3. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. ↩
4. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. ↩
5. SEC. 276. SAME - EXCEPTIONS. * * *
(b) Waiver. - Where before the expiration of the time prescribed in section 275↩ for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.
6. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d)(1)↩.