RESERVE LOAN LIFE INSURANCE COMPANY OF TEXAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3676. Promulgated February 8, 1945.

*George S. Atkinson, Esq.*, for the petitioner.
*J. Marvin Kelley, Esq.*, for the respondent.

**OPINION.**

DISNEY, *Judge*: Supplement G of chapter 1, subchapter C, of the Internal Revenue Code provides for income tax upon life insurance companies. Section 203 (a) (2), a part of Supplement G, provides:

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

\* \* \* \* \* \* \*

(2) RESERVE FUNDS.—An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. \* \* \*

It is agreed that the rate of 3¾ percent applies here.

The first question in this case is whether March 23, 1940, is the beginning of petitioner's taxable year within the meaning of section 203 (a) (2). If so, petitioner is entitled to deduct from gross income the sum of $384,966.15, which is 3¾ percent of the mean of the reserve funds of $10,258,754.85 required by law and held by it on March 23, 1940, and reserve funds of $10,272,773.07 so held by it on December 31, 1940. Respondent argues that petitioner's taxable year began January 1, 1940, so that petitioner may deduct only 3¾ percent of the mean between zero, the amount of petitioner's reserve on January 1, 1940, and the reserve held on December 31, 1940.

To be entitled to any deduction based on its reserves, the petitioner must be a life insurance company. By section 201 (a), a life insurance company is defined as:

(a) DEFINITION.—When used in this chapter the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and

annuity contracts (including contracts of combined life, health and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

Until March 23, 1940, petitioner did not comply with the above definition because it did not earlier hold reserve funds for the fulfillment of its contracts of more than 50 percent of its total reserve funds. It possessed no reserve funds at all until that date. As to this fact there is no disagreement between the parties, and it is agreed that on March 23, 1940, it had reserve funds in the necessary amount. Therefore petitioner was not, within the intendment of the Federal statute here involved, a life insurance company until March 23, 1940,[2] and it follows that it could not, until that date, compute its net income as life insurance companies may do, by deducting the mean of its reserves at the beginning and end of the taxable year. The respondent argues that, because the petitioner's charter was issued in November 1939 and its officers negotiated with the Indiana Company until March 23, 1940, and rented an office building prior to March 23, 1940, it was a life insurance company from before January 1. Such facts are clearly insufficient to make the petitioner a life insurance company under the statutory definition. *Bowers* v. *Lawyers' Mortgage Co.*, 285 U. S. 182, 188.

The petitioner, in effect, contends that because, as we above conclude, it was not a life insurance company until March 23, 1940, its taxable year began on that date, within the meaning of section 203 (a) (2) ; in other words, that the section, in referring to taxable year, refers only to its taxable year as a life insurance company. It cites *Royal Highlanders*, 1 T. C. 184 (reversed on other grounds, 138 Fed. (2d) 240), as authority that a life insurance company may consider its taxable year to begin, and use its reserves in the computation of the deduction, upon the day when it becomes a life insurance company, though it had prior thereto been in existence as a corporation. The respondent, however, takes the view (in addition as above, to contending that petitioner was a life insurance company from date of its charter in November 1939) not only that the petitioner's taxable year is to be measured by its existence as a corporation, so that the petitioner could not, under section 48 (a) of the Internal Revenue Code,[3] file a return for a fraction of a year, and so use the fraction as its taxable year, as was done in the *Royal Highlanders* case, but that in fact the petitioner

---

[2] *Lamano–Panno–Fal¹o Industrial Ins. Co.* v. *Commissioner,* 127 Fed. (2d) 56, 58. See also *West Penn. Beneficial Assn.* v. *United States,* 44 Fed. Supp. 575.

[3] SEC. 48. DEFINITIONS.
When used in this chapter—
(a) TAXABLE YEAR.—"Taxable year" means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this Part. "Taxable year" includes, in the case of a return made for a fractional part of a year under the provisions of this chapter or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made

did file a return for the entire calendar year and so can not, under the text of section 48 (a), have a taxable year beginning on March 23, 1940. To this the petitioner, in substance, answers that, though it did in its return cover the calendar year 1940, it divided both income and deductions into two periods, before and after March 23, thus in reality filing a return for a fractional part of a year, that it was required to cover the entire year by Regulations 103, section 19.201 (b)–1, requiring the return to be upon Form 1120L (which has the caption "For Calendar Year 1940"), also by the instructions issued with the form. In addition, the petitioner points out that the income reported and deductions taken, so far as covering the period January 1 to March 23, 1940, were eliminated by the Commissioner, leaving the return in effect one for a fraction of a year. Therefore, the petitioner says, it comes squarely within section 48 (a) and its taxable year began on March 23, 1940.

In the consideration of this question, we seek first the purpose of the provision in section 203 (a) (2) which allows life insurance companies an unusual deduction, based upon a mean average of its reserves during its taxable year; for it is obvious that, though Supplement G does not provide an entirely separate tax code fully covering life insurance companies,[4] any application of other more general sections, such as 48 (a), should be interpreted in the light of the special nature of life insurance companies, as provided for in Supplement G.[5] The purpose of this deduction allowed life insurance companies by section 203 (a) (2) is clear: "The reason for allowing the deduction of 4 per cent. of the reserve is that a portion of the 'interest, dividends, and rents' received have to be used each year in maintaining the reserve; i. e., adding to it on the basis of a certain interest rate, varying from 3 per cent. to 4 per cent. according to the requirements of the statutes of the several states." Mr. Justice Brandeis, dissenting in *National Life Ins. Co.* v. *United States*, 277 U. S. 508. The report of the Committee on Ways and Means on the Revenue Act of 1942 refers to "The liberal deduction allowed for the amount of interest required for the maintenance of reserves." It thus appears that the 3¾ percent deduction based upon the mean of reserves is an attempt to render tax-free an amount sufficient to cover the amount of income which must actually go into policy reserves under the state statutes governing insurance companies.

The view of the respondent in this case, in our opinion, is opposed to the purpose of the statute, as above set forth; for the respondent would require a life insurance company to be in existence the entire calendar year in order to secure the deduction of 3¾ percent of the

[4] *MacLaughlin* v. *Alliance Ins. Co.*, 286 U. S. 244, 253, 254.
[5] *Helvering* v. *Oregon Mutual Life Ins. Co.*, 311 U. S. 267.

mean reserves handled by it while engaged in life insurance business during such year, and a company which, on the respondent's theory, began business and had reserves on January 3 would, because of the use of zero as representing its reserves, receive only one-half of the deduction which would be received by a company starting on January 1 with the same reserves and ending with the same reserves at the end of the year. The one company, starting on January 1, would receive, in accordance with Congressional intent, deduction of approximately the amounts required to be placed in the reserve, but the second company, starting on January 3, would, though required to place identically the same amount in reserve, receive only one-half as much as a deduction. The same is true, except in degree, in the instant case or in any other case where the life insurance company engages in business for some fraction of a calendar year.[6] Such a result should be countenanced only if clearly required by statute. We do not find such statute.[7] Section 48 (a) of the Internal Revenue Code, as it existed in 1940, is not sufficiently clear in that respect to compel the result for which respondent argues. The first part of the section, defining "taxable year" as calendar year (or fiscal year), adds "upon the basis of which the net income is computed under this Part"; but "this Part" does not include Supplement G, and section 14 (d) of the Internal Revenue Code, as amended by section 201 of the Revenue Act of 1939, specifically provides that, "In the case of insurance companies, the tax shall be as provided in Supplement G." That supplement provides for computation of net income of life insurance companies, by consideration of both income and deductions in a manner peculiar to such life insurance companies, and it appears no strained construction to say that such life insurance company income is not computed under Part IV of subchapter B, referred to as "this Part" in section 48 (a), but is computed under Supplement G, a part of subchapter C. The latter part of section 48 (a) provides specially that " 'Taxable

---

[6] If it be said that, on the other hand, the company which begins life insurance business late in the year will receive too much deduction, if the respondent's theory be not adopted, it is noted that as above seen the deduction was intended to be "liberal" under the statute in force in the taxable years. The Senate Finance Committee, considering the Revenue Act of 1932, recommended that the deduction "be computed at the interest rate at which the policy reserves are actually maintained." This recommendation the Senate did not follow, and Congress adopted the provision quoted above in Section 203 (a) (2) allowing a flat 3¾ percent deduction in any case where the interest assumption rate at which the reserve is maintained is less than 4 percent. It was not until the Revenue Act of 1942, section 163 (a), that an attempt was made to approach more closely, in a credit instead of the old deduction, to the actual experience of life insurance companies in maintaining reserves. Considering this history, it appears that the possibility of a liberal result, in case the life insurance company is engaged in that business only a brief period during the year, does not justify the result herein sought by the Commissioner, which we consider opposed to Congressional purpose. In *Royal Highlanders*, the company was in business a lesser fraction of the year than was the petitioner here.

[7] For a general discussion of this question, see Mertens, Law of Federal Income Taxation, vol. 8, § 44.25, pp. 70, 71.

year' *includes*, in the case of a return made for a fractional part of a year * * *, the period for which such return is made" (italics supplied), and does not define the term as that section does after the amendment of "includes" to "means" by section 135 of the Revenue Act of 1942. Such language does not forbid us to consider taxable year as including, in this case, a portion of a year, even though we assume for the moment that the return was not filed merely for such portion of the year; and if under any circumstances the language of the latter part of section 48 (a) so permits, it would seem to be permissible here, where we are considering a special kind of income, with the object of the statute so clear as expressed in the quotations above set forth, and perhaps more particularly where, as here, the Commissioner in the deficiency notice does not increase the petitioner's income by any amounts contended to have been earned prior to March 23, 1940, but on the contrary has eliminated all income reported and deductions taken by the petitioner for the period from January 1 up to March 23, thus in effect leaving a return for a period beginning March 23.

If the petitioner had filed a return strictly covering only the period from March 23 to December 31, 1940, we think it clear that, under *Royal Highlanders, supra*, the petitioner would be entitled to the deduction claimed, for therein the petitioner, as in this case, had been in existence throughout the entire year, though there as an exempt corporation. The petitioner reported only as to the fraction of the year covered by its business as a life insurance company, and we allowed deduction based upon consideration of its reserves at the date it began business as a life insurance company on May 4, 1937. Thus, the difference between this case and *Royal Highlanders* is the narrow one of possible difference between a return filed for the fraction of the year and one filed, as respondent contends and petitioner denies in this case, for the whole calendar year. We have above observed that section 48 (a) in its latter portion does not, in fact, limit taxable year (in case of fractional years) only to the fraction reported. That question, of course, did not need to be answered in the *Royal Highlanders* case, since the fraction of a year during which life insurance business was transacted was carefully reported. Such a narrow distinction, even if it existed in fact, would not, in view of the generality of "includes" in section 48 (a), be a sound basis upon which to base a holding so essentially out of line with Congressional purpose as the respondent's view herein entails.

In fact, however, we think it may be said that the petitioner did file a return for a fractional part of the year. It did use Form 1120L, which is labeled "For Calendar Year 1940," but the same form was used in *Royal Highlanders*, yet we there found as a fact that the re-

turn was for a fraction of a year. Regulations 103, section 19.201 (b)–1, and the instructions with Form 1120L require a domestic life insurance company to use that form. The petitioner may not, therefore, by the use thereof, be considered to have done more than obey regulations and instructions. It is true, of course, that the petitioner did report income and claim deductions covering the entire calendar year, but this was only compliance with the regulation and instructions. The income and deductions were separated into two periods, before and after March 23, indicating a recognition that a situation different from the earlier part of the year existed after that date, which can only have reference to the beginning of the life insurance business. The petitioner, reporting the entire year, reported no tax, but a loss of about $36,000; and a return for the fractional year beginning on March 23 would likewise have reported a loss, so that the petitioner was, tax-wise, not interested in whether the return included only its own income beginning on March 23 or the income also of the Indiana company up to that date. Under such circumstances, a return covering in one sense the entire year should not, in our opinion, be considered to cause such a distinction between this case and *Royal Highlanders, supra,* as to deny, to the extent of approximately one-half, a deduction which we consider Congress intended the petitioner to have. The petitioner in *Royal Highlanders*, though in existence during the entire calendar year, had no taxable income prior to the beginning of its life insurance status and business, and the same is true of the petitioner here. *Great Southern Life Ins. Co.*, 33 B. T. A. 512; affd., 89 Fed. (2d) 54; and *Western & Southern Life Ins. Co.* v. *Huwe*, 116 Fed. (2d) 1008 (affirming U. S. Dist. Ct., S. Dist. Ohio, Aug. 14, 1939), are not authority contrary to *Royal Highlanders, supra,* or to our conclusion here; for in those cases the companies were life insurance companies from the beginning of the year and merely acquired business of other companies during the year, so that the effect of any reserve so acquired would be reflected in the reserves at the end of the year and the company thus would get deductions based thereon, within the intent of Congress and the rationale of our conclusion here. We hold that the petitioner's taxable year as a life insurance company began March 23, 1940, and that the respondent erred in denying the deduction based upon a mean between petitioner's reserves at March 23 and December 31, 1940.

The parties are in agreement that the above conclusion renders unnecessary the consideration of the second issue; and the same is true of petitioner's alternative contention.

*Decision will be entered for the petitioner.*