CARDINAL LIFE INSURANCE COMPA-
NY, a corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 5–91.

United States District Court
N. D. Texas,
Lubbock Division.

April 22, 1969.

Smith & Baker, by Edward R. Smith, Lubbock, Tex., for plaintiff.

Eldon B. Mahon, U. S. Atty., Dallas, Tex., Dept. of Justice, Tax Division, John O. Jones, Atty., Ft. Worth, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff Cardinal Life Insurance Company, of Lubbock, Texas, seeks to recover income tax and interest assessed against it in the amount of One Hunderd Twenty-Six Thousand Seven Hundred Fifty-Three and 37/100 Dollars ($126,753.37) for the taxable years 1955, 1956, 1958, 1959 and 1960 as follows:

| | |
|---|---|
| 1955 | $ 3,329.46 |
| 1956 | 56,300.53 |
| 1958 | 22,594.83 |
| 1959 | 23,431.20 |
| 1960 | 21,097.35 |
| TOTAL | $126,753.37 |

This case was tried before the Honorable Joseph B. Dooley, and submitted to this Court upon the record by stipulation of the parties after the death of Judge Dooley.

A number of issues are raised by the pleadings. Many of those issues are resolved by the stipulations of the parties. This opinion will deal only with those issues remaining in controversy which are as follows:

(1) Whether Plaintiff during each of the years 1955, 1956, 1958, 1959 and 1960 was a life insurance company within the meaning of Section 801 of the Internal Revenue Code of 1954.

(2) Whether the assessment as to the years 1955 and 1956 was proper under the six-year statute of limitations provision of Section 6501(e) of the Internal Revenue Code of 1954.

(3) If Plaintiff were a life insurance company for either 1959 or 1960, whether for such year or years interest income should be accrued as taxable income by Plaintiff on a promissory note of Valhalla Mausoleum of Midland, Inc.

(4) Whether Plaintiff is liable for interest on the deficiency in taxes for the period October 4, 1963 to October 29, 1963, or whether interest for such period is suspended under the provisions of Section 6601(d) of the Internal Revenue Code of 1954.

Plaintiff was organized as a limited capital stock life insurance company on January 31, 1955, under the provisions of Chapter 3, Article 3.03 of the Texas Insurance Code, 1951, as amended, V.A.

T.S. The original Articles of Incorporation were approved as to form by the Attorney General of the State of Texas on February 1, 1955. Since its inception, Plaintiff has been authorized to write life, health and accident insurance and has been annually licensed by the Insurance Department of the State of Texas as a life insurance company. Plaintiff filed its federal income tax returns as a life insurance company on Form 1120L provided by the Internal Revenue Service for life insurance companies. The federal income tax return filed by non-insurance company corporations is Form 1120.

Prior to April 16, 1957, Plaintiff did not issue any life insurance policies, either directly to insureds or through reinsurance. On that date Plaintiff entered into a reinsurance agreement with Tropical Life Insurance Company. Subsequently, this agreement was terminated and a new reinsurance agreement was entered into between Plaintiff and Great Commonwealth Life Insurance Company on June 15, 1959.

Plaintiff did not, during any of the years here in issue, employ any brokers, solicitors, agents or salesmen to sell its insurance policies. Plaintiff has never issued a policy directly to an assured; all of its life insurance business has been through reinsurance contracts which were negotiated by its one stockholder. Plaintiff has, however, retained the services of an actuary on a fee basis to determine its premium charges on the reinsurance.

The following schedule reflects Plaintiff's business activity during the years in suit.

| | 1955 | 1956 | 1958 | 1959 | 1960 |
|---|---|---|---|---|---|
| Premium income | $ –0– | –0– | 436.54 | 290.37 | 651.90 |
| Dividend income | 397.20 | 595.80 | 2,583.76 | 667.72 | 92.19 |
| Real estate rental income | 16,062.63 | 17,486.20 | –0– | –0– | –0– |
| Trailer rental income | –0– | 5,531.85 | 15,101.28 | 5,576.95 | –0– |
| Interest income | 468.75 | 620.67 | 11,253.95 | 23,919.55 | 6,411.50 |
| Capital gains | 9,164.55 | 160,884.66 | 36,133.84 | 11,493.83 | –0– |
| Total income | $26,093.13 | $185,119.18 | $65,509.37 | $41,948.42 | $7,155.59 |
| Percentage of premium income to total income | –0– | –0– | .66% | .87% | 9.11% |
| No. of policies issued | –0– | –0– | 127 | 125 | 125 |
| Life insurance reserves | –0– | –0– | 575.00 | 382.00 | 394.00 |

Plaintiff timely filed its 1955 and 1956 tax returns *as a life insurance company* on Form 1120L on July 16, 1956 and March 14, 1957, respectively. Plaintiff did not file a copy of its annual statement with such returns as required by General Instruction K on such returns and so indicated that it did not on the face of such returns.

Plaintiff had long term capital gains of $9,164.55 in 1955 and $160,884.66 in 1956. Such gains were not reported on Plaintiff's 1955 and 1956 tax returns as taxable income. Form 1120L, provided by the Internal Revenue Service for life insurance companies for years 1955 and 1956, provided no space for disclosure of capital gain income in 1955 and 1956.

Plaintiff sold no life insurance and had no premium income in 1955 and 1956.

On Plaintiff's 1955 and 1956 tax returns, the following information was set out:

|  | 1955 | 1956 |
|---|---|---|
| Insurance reserves at end of year [Schedules A, B (Part II), C (Part II) and G] | –0– | –0– |
| Gross investment income [Page 2] | $16,928.58 | $24,234.42 |
| Net investment income [Page 2] | 14,976.84 | 15,531.72 |

Such returns for 1955 and 1956 contained no space for disclosure of premium income.

Waivers extending the statute of limitations for 1955 were executed on May 7, 1962 and April 2, 1963, and similar waivers for 1956 were executed on October 18, 1962 and April 2, 1963. Such waivers provided that they were valid only if Section 6501(e) of the Code was applicable.

With regard to the assessments here in question, Plaintiff filed the waiver referred to in Section 6213(d) on or about September 4, 1963.

The notice and demand required by Section 6601(d) was mailed, on or about September 13, 1963 to 2221–34th Street, Lubbock, Texas.

The office of the Plaintiff on September 13, 1963 was in the Great Plains Life Building and this fact was known by the Internal Revenue Service for it had mailed previous documents pertaining to the assessment to the Great Plains Life Building and had been advised thereof by Plaintiff.

Such note and demand was never in fact received by Plaintiff.

Plaintiff paid the tax assessed on October 29, 1963.

On the basis of the above facts, the Court is of the opinion and finds, on the above four issues, as follows:

(1) That Plaintiff was not a life insurance company for the years 1955, 1956, 1958, 1959 and 1960 within the meaning of Section 801 of the Internal Revenue Code of 1954 (all references hereinafter to a section number are to the Internal Revenue Code of 1954 unless otherwise indicated).

(2) That the assessment as to years 1955 and 1956 was improper since the six-year statute of limitations provision of Section 6501(e) was inapplicable.

(3) Inasmuch as Plaintiff was not a life insurance company for 1959 and 1960, this question becomes moot.

(4) Interest for the period from October 4, 1963 to October 29, 1963, is suspended under the provisions of Section 6601(d).

Such findings are discussed in order below:

The distinction between a life insurance company and a non-life insurance company is necessary due to the fact that, since 1921, insurance companies have been given special treatment regarding the payment of federal income taxes. For example, during the years 1955 and 1956, life insurance companies did not pay any tax upon realized capital gains, whereas other corporate taxpayers had to pay the standard twenty-five (25) percent capital gains tax on all gains realized. During the years 1955 and

1956, Plaintiff realized capital gains in the amount of $9,164.64 and $160,884.66, respectively. If Plaintiff is a life insurance company within the meaning of the Internal Revenue Code, then these amounts are not subject to taxation. On the other hand, if Plaintiff is not a life insurance company within the meaning of the Internal Revenue Code, then the realized capital gains will be subject to the normal twenty-five (25) percent capital gains tax.

For the years 1958, 1959 and 1960, the difference in tax treatment between an ordinary corporation and a life insurance company was in the amount of tax paid on income from investments. If Plaintiff was a life insurance company, then certain portions of its investment income escaped taxation; but, on the other hand, if Plaintiff was not a life insurance company, then all of its income is subject to taxation under the normal corporate rates. In addition, for the year 1960, Plaintiff will be a personal holding company as that term is defined in Section 542, and, therefore, is liable for the personal holding company tax as well.

Section 801, which is applicable to all years involved, defines a life insurance company to mean an insurance company engaged in the business of issuing life insurance and annuity contracts either separately or combined with health and accident insurance, and more than fifty (50) percent of the reserves of which are life insurance reserves. The Internal Revenue Code does not define the term "insurance company". In this regard, however, Treasury Regulations 1.801–3 make the following provisions:

(a) *Insurance company.* (1) The term "insurance company" means a company whose primary and predominant business activity during the taxable year is the issuing of insurance or annuity contracts of the reinsuring of risks underwritten by insurance companies. Thus, though its name, charter powers and subjection to State insurance laws are significant in determining the business which a company is authorized and intends to carry

on, it is the character of the business actually done in the taxable year which determines whether a company is taxable as an insurance company under the Internal Revenue Code.

\* \* \* \* \* \*

(b) *Life insurance company.* (1) The term "life insurance company", as used in subtitle A of the Code, is defined in section 801(a). For the purpose of determining whether a company is a "life insurance company" within the meaning of that term as used in section 801(a), it must first be determined whether the company is taxable as an insurance company (as defined in paragraph (a) of this section). An insurance company shall be taxed as a life insurance company if it is engaged in the business of issuing life insurance and annuity contracts (either separately or combined with health and accident insurance), or noncancellable contracts of health and accident insurance, and its life insurance reserves (as defined in section 801(b) and §§ 1.801–4), plus unearned premiums, and unpaid losses (whether or not ascertained), or noncancellable life, health, or accident policies not included in life insurance reserves, comprise more than 50 percent of its total reserves (as defined in section 801(c) and § 1.801–5).

It should be noted that the name of the company, the charter powers and subjection to State insurance laws are significant only in ascertaining the business which the company is authorized to conduct. Whether the Plaintiff is to be classed as a life insurance company for federal taxation purposes is determined by the character of the business actually done during the taxable year. Bowers v. Lawyers Mortgage Co., 285 U.S. 182, 52 S.Ct. 350, 76 L.Ed. 690 (1932). Thus, to qualify as a life insurance company under the federal tax laws, a corporation must use its capital and efforts *primarily* in earning income from the issuance of contracts of insurance.

See Louisville Title Company v. Lucas, 27 F.2d 413 (W.D.Ky.). Moreover, the test is to be applied to the taxpayer on a year by year basis. Treasury Regulations, Sec. 1.801–3.

■ The question presented to the Court in this case then is whether the issuance of insurance contracts by Plaintiff constituted its *primary* and *predominant* business activity during each of the taxable years involved. A review of the schedule of business activity set forth above clearly indicates that Plaintiff was not "primarily and predominantly" in the business of issuing life insurance contracts during any of the years involved in this action. For the years 1955 and 1956, Plaintiff did not earn any income from the issuance of any insurance contracts. Thus, as a matter of law, it was not a life insurance company during those years. Reserve Loan Life Insurance Co., 4 T.C. 732 (1945). For the years 1958, 1959 and 1960, the amount of income earned was insignificant as compared to the total income from other sources.

■ During the years 1958, 1959 and 1960, Plaintiff did issue some policies. However, Plaintiff did not have an active sales force soliciting or selling insurance policies. Each of the insurance policies actually written by Plaintiff was as the result of reinsurance agreements wherein other companies ceded to Plaintiff certain amounts of insurance written by them. These reinsurance contracts were negotiated either by the president and sole stockholder of Plaintiff and/or the company's actuary who rendered services to Plaintiff on a fee basis. Plaintiff otherwise did not have any employees, brokers, agents or salesmen soliciting and selling insurance for it, and the only insurance written by Plaintiff was through reinsurance agreements.

While Plaintiff's insurance activities were insignificant, it was generating substantial income from dividends on stocks, rental income on real estate, rental income on trailers, interest income and capital gains upon disposal of real estate and stocks. These types of income constitute what is defined as personal holding company income which Congress has specifically stated is subject to a tax in addition to ordinary income tax. The Plaintiff is seeking to remove itself from the grasp of the personal holding company provisions by claiming life insurance company status through the issuance of a small and insignificant amount of insurance contracts. The mere fact that the company is authorized and chartered to do business in Texas as a life insurance company is not determinative of the issue. Bowers v. Lawyers Mortgage Co., supra. The question is to be resolved on the basis of the Plaintiff's primary business activity during each of the taxable years. Based upon the undisputed facts, the Court holds that Plaintiff was not a life insurance company during any of the years in question within the meaning and intent of the Internal Revenue Code of 1954. See, also, Wayne Title and Trust Co. v. Commissioner, 195 F.2d 401 (3rd Cir. 1952).

The next issue involved the applicability of the six-year statute of limitations provision of Section 6501(e).

Under the provisions of Section 6501, the three-year and six-year statute of limitations would expire on the dates indicated below:

|  | 3 year | 6 year |
|---|---|---|
| 1955 return | July 16, 1959 | July 16, 1962 |
| 1956 return | March 15, 1960 | March 15, 1963 |

Under the stipulated facts in this case, the three-year statute of limitations precludes assessment by the Commissioner based on Cardinal's 1955 and 1956 re-

turns unless Section 6501(e) is applicable. Such section reads in pertinent part as follows:

If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—

(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.

Section 6501(e) is, by its own words, applicable to a return only if the omission is of an item "properly includible therein". Emma B. Maloy, 45 BTA 1104 (1941); Com'r of Internal Revenue v. Johnson, 276 F.2d 110 (7th Cir. 1960).

Section 803(b) (applicable to life insurance companies with years ending on or before December 31, 1957, including calendar years 1955 and 1956), provided:

In computing gross investment income under this subsection, there shall be excluded any gain from the sale or exchange of a capital asset, and any gain considered as gain from the sale or exchange of a capital asset.

Clearly then there was no error in not reporting capital gains on the life insurance company returns for 1955 and 1956 for such gain is not taxable to a life insurance company. If Plaintiff had reported its capital gains by attaching a schedule, such income would not have been reported as taxable income.

What then was the error? The error was in reporting as a life insurance company. There is no other "error" in this case which would result in a twenty-five (25) percent omission.

In 1958, the Supreme Court decided Colony, Inc. v. Com'r of Internal Revenue, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119. That case examined the legislative history and purpose of what is now Section 6501(e), and stated:

We think that in enacting Section 275 (c) (now Section 6501(e)) Congress manifested no broader purpose than to give the Commissioner an additional two (2) years to investigate tax returns in cases where, *because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors.* In such instances the *return on its face provides no clue* to the existence of the omitted item. On the other hand, *when, as here, the understatement* of a tax *arises from an error in reporting* an item *disclosed on the face of the return the Commissioner* is at no such disadvantage. (Parenthetical material and emphasis added.)

In Plaintiff's case, there was no omission of any item due on a life insurance company tax return, so the error which, in its case, must place the Commissioner "at some special disadvantage" in regard to detection is that of reporting as a life insurance company.

The *Colony* case has established the principle that where a "clue" is given on the face of the return as to the existence of the error, the Commissioner is at no such disadvantage and the three-year statute applies. The "adequate disclosure" and "clue" language of the *Colony* case has been specifically applied to the 1954 Code provisions of Section 6501(e). Lyta J. Morris, ¶ 66,245 P-H Memo TC. The *Morris* case holds that specific disclosure of dollar amounts is not required to avoid the six-year statute.

The required "clue" need not be one which would glaringly "flag" a return, but merely one which would tip off a careful examining agent as to the existence of error. The nature of the item involved in the *Colony* case itself is indicative of this. See also Electra Radio, Inc., ¶ 58, 132 P-H Memo TC.

Such latter case involved the question of whether the five-year (now six-year) statute of limitations applied where income received on television service contracts was not reported. The only "clue" was that on the balance sheet on the back of the return was an item marked "deferred income on contracts". It was held sufficient to apprise the Commissioner of the error and to obviate the five-year statute.

We should look then for clues on Plaintiff's return as to the error. A statement attached to the return setting out the capital gain items would have given no clue as to any error. The clue in Plaintiff's case would be something pointing to the fact that it was not a life insurance company.

This Court held above that as a matter of law Plaintiff was not a life insurance company because it wrote no insurance and had no insurance reserves during those years. See Reserve Loan Life Insurance Co. of Texas, supra, page 737. This holding was in accordance with the position taken by Defendant herein.

The stipulated facts (the tax returns themselves) show clearly in each such year that Plaintiff did not have any life insurance reserves. The absence of reserves, furthermore, means the absence of premium income. The disclosed absence of such factors is definitely a "clue" that Plaintiff was not a life insurance company.

In a completely analogous case, a comparable disclosure was held to be a sufficient clue and to foreclose the five-year statute. See Russell F. Davis, Inc. v. United States, 170 F.Supp. 185 (D.C. Ind.1959). There a corporate taxpayer on the accrual basis of accounting erroneously filed its income tax return on a cash basis. On a cash basis there was no omission of income. The question posed was, "Has the Plaintiff's return provided the Commissioner a clue to the existence of the omitted item sufficient to allow the Commissioner to detect the error at no special disadvantage?" The Court stated, "I think that Schedules L and M of Plaintiff's return provided a sufficient clue for the Commissioner to have realized that the taxpayer was operating on an accrual basis and that the return should have been filed on that basis." (Schedule L is a balance sheet and Schedule M is a reconciliation schedule.) The Court further stated, "The error made by the taxpayer was not even in the computation of the gross income. It related rather to the basis of the computation, that is, whether it should be on an accrual or cash basis. This error, in my opinion, was apparent upon a *careful examination of the return.* For these reasons I think that § 275(c) is not applicable * * *." (Emphasis added.)

The filing on a cash basis in that case is essentially similar to Plaintiff's filing as an insurance company. In each case it resulted in an omission of income and in each case the return contained clues that the basis of filing was wrong.

The Defendant here asserts that "the om*m*ission is determined by what the taxpayer according to law should have reported." Such contention is at variance with the law in the Fifth Circuit. See Davis v. Hightower, 230 F.2d 549 (5th Cir. 1956). In that case the taxpayer had omitted over twenty-five (25) percent of his gross income if certain sales produced ordinary income rather than capital gain. The court surmised that it was in fact ordinary income. The returns contained "clues" as to the gross selling price (though the gross selling price was not reported as income), but the case was decided before the Supreme Court's "clue" case (Colony, Inc. v. Com'r of Internal Revenue) and involved a year which fell before the enactment of what is now Section 6501(e) (1) (A) (ii). In rejecting the same argument advanced by the Defendant in the instant case, the Court there said:

The only way in which the taxpayer here could satisfy the government's

requirement that he state his 'gross income' in a way to permit a tax computation of the amount the government claims is due, would be for him to abandon his claim that he was entitled to capital gains treatment of the sales in question. No such penalty was intended by Congress in extending the statutory period to five years in case of substantial omission. It cannot be thought that if a taxpayer accurately fills in every blank space provided for his use in the income tax form, giving every 'gross' or maximum figure called for, and arrives at an incorrect computation of the tax only by reason of a difference between him and the Commissioner as to the legal construction to be applied to a disclosed transaction, the use of a smaller figure than that ultimately found to be correct in one stage of the computation amounts to an omission from 'gross income' of the difference between the correct and incorrect item.

The only way in which Plaintiff could have satisfied the government's claim that it state its "gross income" in a way to permit a tax computation of the amount the government claims is due, would be for it to abandon its claim that it was a life insurance company. Such an abandonment is not required.

Defendant contends that the assessments against Plaintiff should not be foreclosed by the three-year statute of limitations since Plaintiff failed to file a copy of its annual statement with its Federal income tax returns. In a similar case, Commissioner of Internal Revenue v. Johnson, 32 T.C. 257 (1957), aff'd 276 F.2d 110 (7th Cir. 1960), both the Tax Court and the Seventh Circuit held that the failure to comply with the Government's instruction sheet by attaching a statement *was of no consequence.* What is omitted from the proper line of the return is controlling. Ketcham v. Commissioner of Internal Revenue, 142 F.2d 996, 997 (2nd Cir. 1944).

■ The Court is of the opinion and holds that the only error in the returns as filed was in reporting as a life insurance company. This error was adequately disclosed on the returns themselves. Therefore, the six-year statute of limitations of Section 6501(e) does not apply.

The third issue being moot, we come now to the question of whether interest was suspended under the provisions of Section 6601(d) for the period from October 4, 1963 to October 29, 1963.

■ On or about September 4, 1963, Plaintiff filed the waiver referred to in Section 6213(d). It is clear under Section 6601(d) that interest stops running thirty (30) days after the filing of such waiver unless within such thirty (30) days the Commissioner makes notice and demand. The evidence in the case indicates that the only notice and demand given to Plaintiff was mailed to an address which was no longer Plaintiff's address and which Defendant knew to be no longer Plaintiff's address, and that Plaintiff never in fact received such notice and demand. Under these circumstances, the Court is of the opinion and holds that notice and demand was not given to Plaintiff so as to start the running of interest between October 4, 1963 and October 29, 1963.

Judgment shall be entered giving proper effect to the above opinion and holdings as well as to the stipulations of the parties. The parties are instructed to confer in an effort to submit to the Court an agreed form for such judgment.