# THE COLONY, INC., *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 306.   Argued April 3, 1958.—Decided June 9, 1958.

*A. Robert Doll* argued the cause for petitioner. With him on the brief were *B. H. Barnett* and *Richard C. Oldham.*

*Joseph F. Goetten* argued the cause for respondent. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *Grant W. Wiprud.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

The sole question in this case is whether assessments by the Commissioner of two asserted tax deficiencies were barred by the three-year statute of limitations provided in the Internal Revenue Code of 1939.

Under the 1939 Code the general statute of limitations governing the assessment of federal income tax deficiencies is fixed at three years from the date on which the taxpayer filed his return, § 275 (a), 53 Stat. 86, except in cases involving a fraudulent return or failure to file a return, where a tax may be assessed at any time. § 276 (a), 53 Stat. 87. A special five-year period of limitations is provided when a taxpayer, even though acting in good faith, "omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return . . . ." § 275 (c), 53 Stat. 86. In either case the period of limitation may be extended by a written waiver executed by the taxpayer within the statutory or any extended period of limitation. § 276 (b), 53 Stat. 87.[1]

---

[1] The pertinent provisions of the 1939 Code are:
"SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
"Except as provided in section 276—
"(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection

30

The Commissioner assessed deficiencies in the taxpayer's income taxes for each of the fiscal years ending October 31, 1946, and 1947, within the extended period provided in waivers which were executed by the taxpayer more than three but less than five years after the returns were filed. There was no claim that the taxpayer had inaccurately reported its gross receipts. Instead, the deficiencies were based upon the Commissioner's determination that the taxpayer had understated the gross profits on the sales of certain lots of land for residential purposes as a result of having overstated the "basis" of such lots by erroneously including in their cost certain unallowable items of development expense. There was no claim that the returns were fraudulent.

The Tax Court sustained the Commissioner. It held that substantial portions of the development costs were properly disallowed, and that these errors by the taxpayer

of such taxes shall be begun after the expiration of such period.

"(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

"SEC. 276. SAME—EXCEPTIONS.

"(a) FALSE RETURN OR NO RETURN.—In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

"(b) WAIVER.—Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

had resulted in the understatement of the taxpayer's total gross income by 77.2% and 30.7%, respectively, of the amounts reported for the taxable years 1946 and 1947. In addition, the Tax Court held that in these circumstances the five-year period of limitation provided for in § 275 (c) was applicable. It took the view that the statutory language, "omits from gross income an amount properly includible therein," embraced not merely the omission from a return of an item of income received by or accruing to a taxpayer, but also an understatement of gross income resulting from a taxpayer's miscalculation of profits through the erroneous inclusion of an excessive item of cost. 26 T. C. 30. On the taxpayer's appeal to the Court of Appeals the only question raised was whether the three-year or the five-year statute of limitations governed the assessment of these deficiencies. Adhering to its earlier decision in *Reis* v. *Commissioner,* 142 F. 2d 900, the Court of Appeals affirmed. 244 F. 2d 75. We granted certiorari because this decision conflicted with rulings in other Courts of Appeals on the same issue,[2] and

---

[2] In conflict with this case are decisions in four different Courts of Appeals. *Uptegrove Lumber Co.* v. *Commissioner,* 204 F. 2d 570 (C. A. 3d Cir.); *Deakman-Wells Co.* v. *Commissioner,* 213 F. 2d 894 (C. A. 3d Cir.); *Slaff* v. *Commissioner,* 220 F. 2d 65 (C. A. 9th Cir.); *Davis* v. *Hightower,* 230 F. 2d 549 (C. A. 5th Cir.); *Goodenow* v. *Commissioner,* 238 F. 2d 20 (C. A. 8th Cir.). The Court of Claims has also held to the contrary of the present case. *Lazarus* v. *Commissioner,* 136 Ct. Cl. 283, 142 F. Supp. 897.

Three Courts of Appeals decisions antedating *Uptegrove Lumber Co.* v. *Commissioner, supra,* provided support for the Government's construction of § 275 (c). *Foster's Estate* v. *Commissioner,* 131 F. 2d 405 (C. A. 5th Cir.); *Ketcham* v. *Commissioner,* 142 F. 2d 996 (C. A. 2d Cir.); *O'Bryan* v. *Commissioner,* 148 F. 2d 456 (C. A. 9th Cir.). But neither *Foster's Estate* nor *O'Bryan* can be regarded as the controlling authority within their respective circuits in view of the more recent decisions in *Davis* v. *Hightower, supra,* and *Slaff* v. *Commissioner, supra. Ketcham* is distinguishable on its facts.

The Sixth Circuit has consistently maintained its current posi-

because the question as to the proper scope of § 275 (c), although resolved for the future by § 6501 (e)(1)(A) of the Internal Revenue Code of 1954, p. 37, *infra,* remains one of substantial importance in the administration of the income tax laws for earlier taxable years. 355 U. S. 811.

In determining the correct interpretation of § 275 (c) we start with the critical statutory language, "omits from gross income an amount properly includible therein." The Commissioner states that the draftsman's use of the word "amount" (instead of, for example, "item") suggests a concentration on the quantitative aspect of the error—that is, whether or not gross income was understated by as much as 25%. This view is somewhat reinforced if, in reading the above-quoted phrase, one touches lightly on the word "omits" and bears down hard on the words "gross income," for where a cost item is overstated, as in the case before us, gross income is affected to the same degree as when a gross-receipt item of the same amount is completely omitted from a tax return.

On the other hand, the taxpayer contends that the Commissioner's reading fails to take full account of the word "omits," which Congress selected when it could have chosen another verb such as "reduces" or "understates," either of which would have pointed significantly in the Commissioner's direction. The taxpayer also points out that normally "statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them." *DeGanay* v. *Lederer,* 250 U. S. 376, 381. "Omit" is defined in Webster's New International Dictionary (2d ed. 1939) as "To leave out or unmentioned; not to insert, include, or name,"

---

tion. The Tax Court has also regularly upheld the Commissioner. *E. g., American Liberty Oil Co.* v. *Commissioner,* 1 T. C. 386; *Estate of Gibbs* v. *Commissioner,* 21 T. C. 443.

and the Court of Appeals for the Sixth Circuit has elsewhere similarly defined the word. *Ewald* v. *Commissioner*, 141 F. 2d 750, 753. Relying on this definition, the taxpayer says that the statute is limited to situations in which specific receipts or accruals of income items are *left out* of the computation of gross income. For reasons stated below we agree with the taxpayer's position.

Although we are inclined to think that the statute on its face lends itself more plausibly to the taxpayer's interpretation, it cannot be said that the language is unambiguous. In these circumstances we turn to the legislative history of § 275 (c). We find in that history persuasive evidence that Congress was addressing itself to the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes.

Section 275 (c) first appeared in the Revenue Act of 1934. 48 Stat. 680. As introduced in the House the bill simply added the gross-income provision to § 276 of the Revenue Act of 1932, 47 Stat. 169, relating to fraudulent returns and cases where no return had been filed, and carried with it no period of limitations. The intended coverage of the proposed provision was stated in a Report of a House Ways and Means Subcommittee as follows:

> "Section 276 provides for the assessment of the tax without regard to the statute of limitations in case of a failure to file a return or in case of a false or fraudulent return with intent to evade tax.
>
> "Your subcommittee is of the opinion that the limitation period on assessment should also not apply to certain cases where the taxpayer has understated his gross income on his return by a large amount, even though fraud with intent to evade tax cannot be established. It is, therefore, recommended that

the statute of limitations shall not apply where the taxpayer has failed to disclose in his return an amount of gross income in excess of 25 percent of the amount of the gross income stated in the return. The Government should not be penalized when a taxpayer is so negligent as to leave out items of such magnitude from his return." Hearings before the House Committee on Ways and Means, 73d Cong., 2d Sess. 139.

This purpose of the proposal was related to the full Committee in the following colloquy between Congressman Cooper of Tennessee, speaking for the Subcommittee, and Mr. Roswell Magill, representing the Treasury:

"Mr. COOPER. What we really had in mind was just this kind of a situation: Assume that a taxpayer left out, say, a million dollars; he just forgot it. We felt that whenever we found that he did that we ought to get the money on it, the tax on it.

"Mr. MAGILL. I will not argue against you on that score.

"Mr. COOPER. In other words, if a man is so negligent and so forgetful, or whatever the reason is, that he overlooks an item amounting to as much as 25 percent of his gross income, that we simply ought to have the opportunity of getting the tax on that amount of money." House Hearings, *supra,* at 149.

The full Committee revealed the same attitude in its report:

"It is not believed that taxpayers who are so negligent as to leave out of their returns items of such magnitude should be accorded the privilege of pleading the bar of the statute." H. R. Rep. No. 704, 73d Cong., 2d Sess. 35.

The Senate Finance Committee approved of the intended coverage and language of the bill, except that it believed the statute of limitations should not be kept open indefinitely in the case of an honest but negligent taxpayer. Its report stated:

". . . Your committee is in general accord with the policy expressed in this section of the House bill. However, it is believed that in the case of a taxpayer who makes an honest mistake, it would be unfair to keep the statute open indefinitely. For instance, a case might arise where a taxpayer failed to report a dividend because he was erroneously advised by the officers of the corporation that it was paid out of capital or he might report as income for one year an item of income which properly belonged in another year. Accordingly, your committee has provided for a 5-year statute in such cases." S. Rep. No. 558, 73d Cong., 2d Sess. 43–44.

Except for embodying the five-year period of limitation, § 275 (c), as passed, reflects no change in the original basic objective underlying its enactment.

As rebutting these persuasive indications that Congress merely had in mind failures to report particular income receipts and accruals, and did not intend the five-year limitation to apply whenever gross income was understated, the Commissioner stresses the occasional use of the phrase "understates gross income" in the legislative materials. The force of this contention is much diluted, however, when it is observed that wherever this general language is found its intended meaning is immediately illuminated by the use of such phrases as "failed to disclose" or "to leave out" items of income. See *Uptegrove Lumber Co.* v. *Commissioner,* 204 F. 2d 570, 572.

The Commissioner also suggests that in enacting § 275 (c) Congress was primarily concerned with providing for a longer period of limitations where returns contained relatively large errors adversely affecting the Treasury, and that effect can be given this purpose only by adopting the Government's broad construction of the statute. But this theory does not persuade us. For if the mere size of the error had been the principal concern of Congress, one might have expected to find the statute cast in terms of errors in the total tax due or in total taxable net income. We have been unable to find any solid support for the Government's theory in the legislative history. Instead, as the excerpts set out above illustrate, this history shows to our satisfaction that the Congress intended an exception to the usual three-year statute of limitations only in the restricted type of situation already described.

We think that in enacting § 275 (c) Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. And this would seem to be so whether the error be one affecting "gross income" or one, such as overstated deductions, affecting other parts of the return. To accept the Commissioner's interpretation and to impose a five-year limitation when such errors affect "gross income," but a three-year limitation when they do not, not only would be to read § 275 (c) more broadly than is justified by the evident reason for its enactment, but also to create a patent incongruity in the

tax law. See *Uptegrove Lumber Co.* v. *Commissioner, supra,* at 573.

Finally, our construction of § 275 (c) accords with the interpretations in the more recent decisions of four different Courts of Appeals. See note 2, *supra.* The force of the reasoning in these opinions was recognized by the Court of Appeals in the present case, which indicated that it might have agreed with those courts had the matter been *res nova* in its circuit. 244 F. 2d, at 76. And without doing more than noting the speculative debate between the parties as to whether Congress manifested an intention to clarify or to change the 1939 Code, we observe that the conclusion we reach is in harmony with the unambiguous language of § 6501 (e)(1)(A) of the Internal Revenue Code of 1954.[3]

---

[3] "SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

. . . .

"(e) OMISSION FROM GROSS INCOME.—Except as otherwise provided in subsection (c)—

"(1) INCOME TAXES.—In the case of any tax imposed by subtitle A—

"(A) GENERAL RULE.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—

"(i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

"(ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item." 68A Stat. 803, 804–805.

We hold that both tax assessments before us were barred by the statute of limitations.

*Reversed.*

THE CHIEF JUSTICE and MR. JUSTICE BLACK would follow the interpretation consistently given § 275 (c) by the Tax Court for many years and affirm the judgment of the Court of Appeals in this case. See cases cited in note 2 of the Court's opinion.