# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 5, 2011

Decided June 21, 2011
Resubmitted September 15, 2011

No. 10-1262

UTAM, LTD. AND DDM MANAGEMENT, INC., TAX MATTERS
PARTNER,
APPELLEES

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLANT

Appeal from the United States Tax Court

*Gilbert S. Rothenberg*, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Michael J. Haungs* and *Joan I. Oppenheimer*, Attorneys.

*James F. Martens* argued the cause for appellees. With him on the brief were *Michael B. Seay*, *Amanda Traphagan*, and *Renea Hicks*.

*Roger J. Jones*, *Andrew R. Roberson* and *Kim Marie Boylan*, were on the brief for *amicus curiae* Bausch & Lomb Incorporated in support of appellees.

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: This appeal presents two broad issues. The first is whether an understatement of income can trigger the six-year, extended tax assessment period under § 6501(e)(i)(A) of the Internal Revenue Code (26 U.S.C.) when the understatement results from an overstatement of basis in sold property. The second is whether the mailing of a notice of final partnership administrative adjustment by the IRS tolls an individual partner's limitation period under I.R.C. § 6501. In a companion case, we have resolved the first issue in favor of the IRS. *See Intermountain Ins. Serv. of Vail, LLC v. Comm'r*, No. 10-1204 (D.C. Cir. June 21, 2011) (as amended Aug. 18, 2011). We write separately to address the second.

The issues arise from the following facts. David Morgan formed an insurance business under the name "Success Life." He later merged Success Life into UTA Management, an S corporation he solely owned. (Under the Code, the income and losses of an S corporation are passed through to its shareholders for federal tax purposes.) In 1999, Morgan caused UTA Management's assets to be contributed to UTAM, a newly formed limited partnership. UTA Management owned a ninety-nine percent partnership interest in UTAM. DDM Management, a separate S corporation owned by Morgan and members of his family, held the remaining one percent. Morgan later agreed to sell the partnership interests of UTA Management and DDM to an unrelated insurance company.

Before the sale, Morgan entered into a series of transactions that had the effect of inflating UTA Management's "outside

basis" in the UTAM partnership. A partner's outside basis is the value assigned to the partner's investment in his partnership interest. *See Am. Boat Co. v. United States*, 583 F.3d 471, 474 n.1 (7th Cir. 2009). When a partner sells his partnership interest, the basis is subtracted from the sale price to calculate the partner's capital gain or loss from the sale. *See* I.R.C. §§ 61(a)(3), 1001(a). The higher a partner's basis, the lower the income resulting from the sale of the partnership for federal tax purposes.

To increase UTA Management's outside basis in the partnership, Morgan sold short U.S. Treasury notes with a face value of $38 million, receiving cash proceeds of just under that amount. In a short-sale transaction, borrowed property is sold, with the seller incurring an obligation to later buy an equivalent amount of that property and thus "close" the sale. *See generally Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 820 (3d Cir. 1988). Morgan transferred the proceeds received from the short sale, along with the obligation to close the sale, to UTA Management, which then transferred them to UTAM. By doing so, Morgan raised UTA Management's outside basis in the partnership by nearly $38 million—the amount of the sale proceeds—without accounting for the corresponding obligation to buy.[1] UTAM later closed the sale by buying Treasury notes for slightly more than $38 million, resulting in an overall loss to UTAM from the transaction.

The sale of UTAM closed on October 19, 1999. Morgan elected to have the stock sale treated as the sale of UTA Management's assets for income tax purposes. The tax

---

[1] In 2000, the IRS clarified that such transactions—known popularly as "Son of BOSS" tax shelters—were abusive when used to generate artificial losses for tax purposes. *See* I.R.S. Notice 2000–44, 2000–2 C.B. 255.

consequences of the sale were reflected on UTA Management's 1999 return, filed on August 15, 2000. Because the short-sale transactions raised UTA Management's outside basis in the partnership to more than $41 million, UTA Management claimed an overall loss of approximately $13 million. This number was derived by subtracting UTA Management's outside basis from the $28 million received for its interest. Without the basis increase resulting from the short-sale transactions, UTA Management would have realized a capital gain of approximately $25 million. Morgan filed his 1999 individual return on October 16, 2000. On that return he reported the flow through loss from the sale.

On October 13, 2006—more than six years after the filing of UTAM's 1999 partnership return but less than six years from the filing of Morgan's 1999 individual return—the IRS mailed a notice of final partnership administrative adjustment to DDM Management (UTAM's "tax matters" partner) pertaining to UTAM's 1999 tax year. In the notice, the IRS adjusted the firm's outside partnership basis to zero. The IRS explained that the short-sale transactions "lacked economic substance, and, in fact and substance, constitute[d] an economic sham for federal income tax purposes." It determined that UTA Management should have reduced its outside basis to account for the offsetting obligations that were transferred to UTAM along with the short-sale proceeds. And it found that UTAM was itself a sham, existing solely for tax avoidance purposes.

DDM Management filed a timely petition for readjustment of partnership items with the Tax Court. *See* I.R.C. § 6226(a). DDM and UTAM argued, among other things, that the IRS's adjustments were barred by the general three-year limitation

period for tax assessments in I.R.C. § 6501(a).[2] The Tax Court agreed, relying on *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958). That case, interpreting a predecessor provision to § 6501, held that the extended assessment period that applies when "the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return" is not triggered by an understatement of income resulting from an overstatement of basis in sold property.[3] *Id.* at 36-38.

---

[2] That section states, in relevant part: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) . . .." I.R.C. § 6501(a).

[3] The extended six-year assessment period is currently located at I.R.C. § 6501(e)(1)(A). The version of § 6501(e)(1)(A) applicable in 1999, the tax year in question, read:

(e) Substantial omission of items
　　Except as otherwise provided in subsection (c)—
　　(1) Income taxes.—In the case of any tax imposed by subtitle A—
　　(A) General Rule.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph—
　　　　(i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to the diminution by the cost of such sales or services; and
　　　　(ii) In determining the amount omitted from gross

For the reasons stated in *Intermountain Insurance Service of Vail, LLC v. Commissioner*, No. 10-1204 (D.C. Cir. June 21, 2011) (as amended Aug. 18, 2011), we disagree with the Tax Court and hold that the six-year limitations period applies with regard to Morgan's 1999 return.[4] This, however, does not end the case. UTAM has other defenses the Tax Court did not reach, defenses that raise issues not presented in *Intermountain*. For several reasons, UTAM claims that the mailing of the notice of final partnership administrative adjustment (usually known simply as an "FPAA") to DDM Management did not toll the running of Morgan's § 6501 limitations period. In other words, even though the FPAA came less than six years after Morgan filed his 1999 return, the limitations period expired during the proceedings that followed.

To evaluate UTAM's claims it is necessary to understand how the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 (codified as amended at I.R.C. §§ 6221-6232), deals with partnerships. An important point is that partnerships do not pay taxes; only individual partners do. Even so, partnerships must file annual informational returns. *See Petaluma FX Partners, LLC v. Comm'r*, 591 F.3d 649, 650 (D.C. Cir. 2010). When the IRS disagrees with how a

---

income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

I.R.C. § 6501(e)(1)(A) (2000).

[4] We express no view on the question whether the nature and amount of Morgan's income was adequately disclosed within the meaning of I.R.C. § 6501(e)(1)(A)(ii). This issue remains open to the Tax Court on remand.

partnership return has reported a "partnership item,"[5] it mails a notice of final partnership administrative adjustment to the partners. *See* I.R.C. § 6223(a); *Petaluma FX Partners*, 591 F.3d at 651. If the partnership's "tax matters partner" wishes to contest an adjustment, he may file a petition for readjustment within ninety days. I.R.C. § 6226(a). The petition initiates a court proceeding to determine all partnership items addressed in the FPAA. *See id.* § 6226(f). Only after this proceeding may the IRS assess any resulting tax against the individual partners. *Id.* § 6225(a).

There is no separate limitations period for the mailing of the notice of final partnership administrative adjustment. But the notice would have no point if the IRS sent it after all of the individual partners' assessment periods had expired for taxes reflected in the adjustment. *See Rhone-Poulenc Surfactants & Specialities, L.P. v. Comm'r*, 114 T.C. 533, 534-35 (2000). The Tax Equity and Fiscal Responsibility Act therefore contains a special provision for calculating a partner's assessment period with respect to tax attributable to partnership items and "affected" items.[6] Normally an individual's assessment period is calculated from the date on which he filed his *personal* return. *See* I.R.C. § 6501(a). But § 6229(a) of the Internal Revenue Code provides that "the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year

---

[5] A partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3).

[6] An affected item is "any item to the extent such item is affected by a partnership item." I.R.C. § 6231(a)(5).

shall not expire" before the later of the filing of the *partnership* return or the last day for filing such a return, plus three years. Subsection 6229(c)(2) extends this three-year assessment window to six years after the filing of the partnership return when there is a substantial omission of income on the partnership return. *Id.* § 6229(c). These provisions have the effect of extending an individual partner's assessment period whenever the partnership return is filed after that individual's personal return.

The provision with which we are concerned— § 6229(d)—states that "[i]f notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in [I.R.C. § 6229(a)] . . . shall be suspended" for the pendency of any proceeding initiated under § 6226 and for one year thereafter. *Id.* § 6229(d). UTAM argues that the "period specified" in § 6229(a) refers only to the assessment period specific to partnership (and affected) items. Under the parties' stipulations, this period expired before the IRS mailed the notice of final partnership administrative adjustment. Thus, UTAM argues, there was nothing for § 6229(d) to suspend.

Although the Tax Court did not reach the issue, that court's *en banc* opinion in *Rhone-Poulenc*, 114 T.C. 533, determined that § 6229(d) suspends the running of an individual partner's § 6501 limitations period when that period is open on the date the IRS mailed the FPAA. A remand on this particular issue would therefore serve no useful purpose. The Tax Court has already stated its position, a position with which we agree for the reasons that follow.

The only period "specified" in § 6229(a) is "the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected

item) for a partnership taxable year . . .." Since partnerships are not taxed, we take this language to refer to a partner's generally applicable assessment period as provided in § 6501. *See Andantech, L.L.C. v. Comm'r*, 331 F.3d 972, 976-77 (D.C. Cir. 2003). In Morgan's case, that period is, as we have said, six years. By the time of the FPAA, the period provided by § 6229 had passed, but the six-year period under § 6501 applicable to Morgan's individual return was still running.

Logic does not give starting points. Binding opinions of this court do. Our decision in *Andantech* is such a starting point. We there decided that § 6229(a) does not provide the maximum period for assessments, even with respect to partnership items. That, we said, is the function of § 6501, which is why the period set forth there is a "limitation." Section 6229(a), on the other hand, is something else again; rather than a limitation, it is a *minimum* period for the IRS to take action. *Andantech*, 331 F.3d at 976-77. Put differently, § 6229(a) tells us that the IRS has at least this much time to proceed—but that tells us nothing about how much beyond this time the IRS has. Yet if we were to accept UTAM's position that the FPAA cannot toll individual partners' § 6501 periods after the § 6229(a) minimum period passes, we would be converting the minimum period in many cases into a limitation period, in contravention of the premise of *Andantech*. We therefore hold that the assessment period suspended pursuant to § 6229(d) is the partner's open assessment period under § 6501.[7]

---

[7] UTAM argues that even if § 6229(d) can be used to toll a partner's open § 6501 period, it did not do so here because the FPAA adjusted only nonpartnership items and was therefore invalid. UTAM's argument rests on certain factual stipulations the parties made in the Tax Court for purposes of litigating the statute of limitations issue. But there was no stipulation that the FPAA was "invalid," as UTAM claims. The FPAA gave notice of the

The judgment of the Tax Court on the statute of limitations issue is reversed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

Commissioner's determination of adjustments to partnership items. *See, e.g.*, *Clovis I v. Comm'r*, 88 T.C. 980, 982 (1987). These included sham transactions and their attendant incomes, gains, losses, and deductions. The nature of the adjustments in the FPAA remained the same regardless of the limited stipulations; as the stipulations made clear, whether the evidence ultimately would support the adjustments was to be determined at trial. We therefore have no reason to decide whether an "invalid" notice of final partnership administration adjustment may toll the statutory assessment period.