Justice Kennedy,
with whom Justice Ginsburg, Justice Sotomayor, and Justice Kagan join, dissenting.
This case involves a provision of the Internal Revenue Code establishing an extended statute of limitations for tax assessment in cases where substantial income has been omit *498 ted from a tax return. See 26 U. S. C. § 6501(e)(1)(A) (2006 ed., Supp. IV). The Treasury Department has determined that taxpayers omit income under this section not only when they fail to report a sale of property but also when they overstate their basis in the property sold. See Treas. Reg. § 301.6501(e)-1, 26 CPR § 301.6501(e)-1 (2011). The question is whether this otherwise reasonable interpretation is foreclosed by the Court’s contrary reading of an earlier version of the statute in Colony, Inc. v. Commissioner, 357 U. S. 28 (1958).
In Colony there was no need to decide whether the meaning of the provision changed when Congress reenacted it as part of the 1954 revision of the Tax Code. Although the main text of the statute remained the same, Congress added new provisions leading to the permissible conclusion that it would have a different meaning going forward. The Colony decision reserved judgment on this issue. In my view, the amended statute leaves room for the Department’s reading. A summary of the reasons for concluding the Department’s interpretation is permissible, and for this respectful dissent, now follows.
I
The statute at issue in Colony, 26 U. S. C. § 275(c) (1940 ed.), was enacted as part of the Internal Revenue Code of 1939. It provided for a longer period of limitations if the Government assessed income taxes against a taxpayer who had “omit[ted] from gross income an amount ... in excess of 25 per centum of the amount of gross income stated in the return.”
There was disagreement in the courts about the meaning of this provision in the statute as first enacted. The Tax Court of the United States, and the United States Court of Appeals for the Sixth Circuit, held that an overstatement of basis constituted an omission from gross income and could trigger the extended limitations period. See, e. g., Reis v. Commissioner, 142 F. 2d 900, 902-903 (1944); American Lib *499 erty Oil Co. v. Commissioner, 1 T. C. 386 (1942). The United States Court of Appeals for the Third Circuit came to the opposite conclusion in a case where a corporation misreported its income after inflating the cost of goods it sold from inventory. See Uptegrove Lumber Co. v. Commissioner, 204 F. 2d 570, 571-573 (1953). In the Third Circuit’s view there could be an omission only where the taxpayer had left an entire “item of gain out of his computation of gross income.” Id., at 571. In the Colony decision, issued in 1958, this Court resolved that dispute against the Government. Acknowledging that “it cannot be said that the language is unambiguous,” 357 U. S., at 33, and relying in large part on the legislative history of the 1939 Code, the Court concluded that the mere overstatement of basis did not constitute an omission from gross income under § 275(c).
If the Government is to prevail in the instant case the regulation in question must be a proper implementation of the same language the Court considered in Colony; but the statutory interpretation issue here cannot be resolved, and the Colony decision cannot be deemed controlling, without first considering the inferences that should be drawn from added statutory text. The additional language was not part of the statute that governed the taxpayer’s liability in Colony, and the Court did not consider it in that case. Congress revised the Internal Revenue Code in 1954, several years before Colony was decided but after the tax years in question in that ease. Although the interpretation adopted by the Court in Colony can be a proper beginning point for the interpretation of the revised statute, it ought not to be the end.
The central language of the new provision remained the same as the old, with the longer period of limitations still applicable where a taxpayer had “omit[ted] from gross income an amount ... in excess of 25 per[cent] of the amount of gross income stated in the return.” In Colony, however, the Court left open whether Congress had nonetheless “man *500 ifested an intention to clarify or to change the 1939 Code.” Id., at 37. The 1954 revisions, of course, could not provide a direct response to Colony, which had not yet been decided. But there were indications that, whatever the earlier version of the statute had meant, Congress expected that the overstatement of basis would be considered an omission from gross income as a general rule going forward.
For example, the new law created a special exception for businesses by defining their gross income to be “the total of the amounts received or accrued from the sale of goods or services” without factoring in “the cost of such sales or services.” 26 U. S. C. § 6501(e)(l')(A)(i) (1958 ed.) (currently § 6501(e)(l)(B)(i) (2006 ed., Supp. IV)). The principal purpose of this provision, perhaps motivated by the facts in the Third Circuit’s Uptegrove decision, seems to have been to ensure that the extended statute of limitations would not be activated by a business’ overstatement of the cost of goods sold. This did important work. Thére are, after all, unique complexities involved in calculating inventory costs. See, e. g., 0. Whittington & K. Pany, Principles of Auditing and Other Assurance Services 488 (15th ed. 2006) (“The audit of inventories presents the auditors with significant risk because: (a) they often represent a very substantial portion of current assets, (b) numerous valuation methods are used for inventories, (c) the valuation of inventories directly affects cost of goods sold, and (d) the determination of inventory quality, condition, and value is inherently complex”); see also Internal Revenue Service, Publication 538, Accounting Periods and Methods 17 (rev. Mar. 2008) (discussing methods for identifying the cost of items in inventory). Congress sought fit to make clear that errors in these kinds of calculations would not extend the limitations period.
Colony itself might be classified as a special “business inventory” case. Unlike the taxpayers here, the taxpayer in Colony claimed to be a business with income from the sale of goods, though the “goods” it held for sale were real estate lots. See Intermountain Ins. Serv. of Vail v. Commis *501 sioner, 650 F. 3d 691, 703 (CADC 2011) (Tatel, J.) (“Colony described itself as a taxpayer in a trade or business with income from the sale of goods or services — i. e., as falling within [clause] (i)’s scope had the subsection applied pre-1954 . . . ”). The Court, in turn, observed that its construction of the pre-1954 statute in favor of the taxpayer was “in harmony with the unambiguous language of [newly enacted] § 6501(e)(1)(A).” 357 U. S., at 37. Clause (i) of the new provision, as just noted, ensured that the extended limitations period would not cover overstated costs of goods sold. The revised statute’s special treatment of these costs suggests that overstatements of basis in other cases could have the effect of extending the limitations period.
It is also significant that, after 1954, the statute continued to address the omission of a substantial “amount” that should have been included in gross income. In the same round of revisions to the Tax Code, Congress established an extended limitations period in certain cases where “items” had been omitted from an estate or gift tax return. 26 U. S. C. § 6501(e)(2) (1958 ed.). There is at least some evidence that this term was used at that time to “mak[e] it clear” that the extended limitations period would not apply “merely because of differences between the taxpayer and the Government as to the valuation of property.” Staff of the Joint Committee on Internal Revenue Taxation, Summary of the New Provisions of the Internal Revenue Code of 1954, 84th Cong., 1st Sess., 130 (Comm. Print 1955). Congress’ decision not to use the term “items” to achieve the same result when it reenacted the statutory provision at issue is presumed to have been purposeful. See Russello v. United States, 464 U. S. 16, 23 (1983). This consideration casts further doubt on the premise that the new version of the statute, § 6501(e)(1)(A) (2006 ed., Supp. IV), necessarily has the same meaning as its predecessor.
II
In the instant case the Court concludes these statutory changes are “too fragile to bear the significant argumenta *502 tive weight the Government seeks to place upon them.” Ante, at 484. But in this context, the changes are meaningful. Colony made clear that the text of the earlier version of the statute could not be described as unambiguous, although it ultimately concluded that an overstatement of basis was not an omission from gross income. See 357 U. S., at 33. The statutory revisions, which were not considered in Colony, may not compel the opposite conclusion under the new statute; but they strongly favor it. As a result, there was room for the Treasury Department to interpret the new provision in that manner. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 843-845 (1984).
In an earlier case, and in an unrelated controversy not implicating the Internal Revenue Code, the Court held that a judicial construction of an ambiguous statute did not foreclose an agency’s later, inconsistent interpretation of the same provision. National Cable & Telecommunications Assn. v. Brand X Internet Services, 545 U. S. 967, 982-983 (2005) (“Only a judicial precedent holding that the statute unambiguously forecloses the agency’s interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction”). This general rule recognizes that filling gaps left by ambiguities in a statute “involves difficult policy choices that agencies are better equipped to make than courts.” Id., at 980. There has been no opportunity to decide whether the analysis would be any different if an agency sought to interpret an ambiguous statute in a way that was inconsistent with this Court’s own, earlier reading of the law. See id., at 1003 (Stevens, J., concurring).
These issues are not implicated here. In Colony the Court did interpret the same phrase that must be interpreted in this case. The language was in a predecessor statute, however, and Congress has added new language that, in my view, controls the analysis and should instruct the Court to reach a different outcome today. The Treasury Depart *503 ment’s regulations were promulgated in light of these statutory revisions, which were not at issue in Colony. There is a serious difficulty to insisting, as the Court does today, that an ambiguous provision must continue to be read the same way even after it has been reenacted with additional language suggesting Congress would permit a different interpretation. Agencies with the responsibility and expertise necessary to administer ongoing regulatory schemes should have the latitude and discretion to implement their interpretation of provisions reenacted in a new statutory framework. And this is especially so when the new language enacted by Congress seems to favor the very interpretation at issue. The approach taken by the Court instead forecloses later interpretations of a law that has changed in relevant ways. Cf. United States v. Mead Corp., 533 U. S. 218, 247 (2001) (Scalia, J., dissenting) (“Worst of all, the majority’s approach will lead to the ossification of large, portions of our statutory law. Where Chevron applies, statutory ambiguities remain ambiguities subject to the agency’s ongoing clarification”). The Court goes too far, in my respectful view, in constricting Congress’ ability to leave agencies in charge of filling statutory gaps.
Our legal system presumes there will be continuing dialogue among the three branches of Government on questions of statutory interpretation and application. See Blakely v. Washington, 542 U. S. 296, 326 (2004) (Kennedy, J., dissenting) (“Constant, constructive discourse between our courts and our legislatures is an integral and admirable part of the constitutional design”); Mistretta v. United States, 488 U. S. 361, 408 (1989) (“Our principle of separation of powers anticipates that the coordinate Branches will converse with each other on matters of vital common interest”). In some cases Congress will set out a general principle, to be administered in more detail by an agency in the exercise of its discretion. The agency may be in a proper position to evaluate the best means of implementing the statute in its practical applica *504 tion. Where the agency exceeds its authority, of course, courts must invalidate the regulation. And agency interpretations that lead to unjust or unfair consequences can be corrected, much like disfavored judicial interpretations, by congressional action. These instructive exchanges would be foreclosed by an insistence on adhering to earlier interpretations of a statute even in light of new, relevant statutory amendments. Courts instead should be open to an agency’s adoption of a different interpretation where, as here, Congress has given new instruction by an amended statute.
Under the circumstances, the Treasury Department had authority to adopt its reasonable interpretation of the new tax provision at issue. See Mayo Foundation for Medical Ed. and Research v. United States, 562 U. S. 44, 58 (2011). This was also the conclusion reached in well-reasoned opinions issued in several cases before the Courts of Appeals. E. g., Intermountain, 650 F. 3d, at 705-706 (reaching this conclusion “because the Court in Colony never purported to interpret [the new provision]; because [the new provision’s ‘omits from gross income’ text is at least ambiguous, if not best read to include overstatements of basis; and because neither the section’s structure nor its [history and context] removes this ambiguity”).
The Department’s clarification of an ambiguous statute, applicable to these taxpayers, did not upset legitimate settled expectations. Given the statutory changes described above, taxpayers had reason to question whether Colony’s holding extended to the revised § 6501(e)(1). See, e.g., CC & F Western Operations L. P. v. Commissioner, 273 F. 3d 402, 406, n. 2 (CA1 2001) (“Whether Colony’s main holding carries over to section 6501(e)(1) is at least doubtful”). Having worked no change in the law, and instead having interpreted a statutory provision without an established meaning, the Department’s regulation does not have an impermissible retroactive effect. Cf. Smiley v. Citibank (South Dakota), N. A., 517 U. S. 735, 741, 744, n. 3 (1996) (rejecting retroactiv *505 ity argument); Manhattan Gen. Equipment Co. v. Commissioner, 297 U. S. 129, 135 (1936) (same). It controls in this
[[Image here]]
For these reasons, and with respect, I dissent.